Jay Creswell and Alice D. Creswell (Husband and Wife) v. Commissioner.
Creswell v. Commissioner
Docket No. 58635.
United States Tax Court
T.C. Memo 1958-54; 1958 Tax Ct. Memo LEXIS 176; 17 T.C.M. (CCH) 279; T.C.M. (RIA) 58054; April 7, 1958
Jay Creswell, 802 South Summerlin Street, Orlando, Fla., pro se. Roger L. Davis, Esq., for the respondent. KERN Memorandum Findings of Fact and Opinion The respondent determined the following deficiencies and additions to tax in the petitioners' income taxes: Additions to tax
Year
Deficiency
291(a)
293(a)
294(d)(1)(A)
294(d)(2)
I.R.C. 1939
1948
$2,231.52
$557.88
$111.58
$223.16
$133.89
1949
2,077.78
103.89
199.64
119.78
*177 The deficiencies arise by reason of adjustments made by respondent and explained in the statement attached to the statutory notice of deficiency, as follows: "During the year 1948 you made withdrawals from Anker-Holth Manufacturing Company, Port Huron, Michigan, totaling $19,229.84. This total consisted of traveling and entertainment expense of $9,883.68, which is composed of traveling expense paid directly by Anker-Holth Manufacturing Company in the amount of $7,312.03 and reimbursed traveling and entertainment expense of $2,571.65, and fees in lieu of salary of $9,346.16. A deduction in the amount of $3,294.56 which is one-third of the traveling and entertainment expense total of $9,883.68 is allowed for estimated travel expense against the total withdrawals of $19,229.84. It is held that the balance of $15,935.28 constitutes taxable income to you under the provisions of section 22(a) of the Internal Revenue Code of 1939. "During the year 1949 you made withdrawals from Anker-Holth Manufacturing Company, Port Huron, Michigan, totaling $18,042.00. This total consisted of traveling expense of $9,883.61, outside management expense of $5,000.00, executive salary of $1,269.18, accounts *178 payable advance of $889.21 and fee in lieu of salary of $1,000.00. A deduction in the amount of $6,352.85, which consists of salary income of $3,055.32 from Anker-Holth Manufacturing Company reported in your return and estimated travel expense of $3,297.53 is allowed against the total withdrawals of $18,042.00. It is held that the balance of $11,689.15 constitutes taxable income to you under the provisions of section 22(a) of the Internal Revenue Code of 1939." The questions for our decision are (1) whether the withdrawals above referred to constituted taxable income to petitioners for the years in question or constituted the repayment of loans; and (2) whether petitioners are liable for additions to tax under sections 291(a), 293(a), 294(d)(1)(A), and 294(d)(2) of the Internal Revenue Code of 1939. Findings of Fact Some of the facts have been stipulated. The stipulation and exhibits annexed thereto are incorporated herein by this reference. Jay Creswell and Alice D. Creswell are husband and wife now residing in Florida. During the years 1948 and 1949 they resided in Plymouth, Indiana, and filed their joint Federal income tax returns for the calendar *179 years 1948 and 1949 with the then collector of internal revenue for the district of Indiana. Since Alice is involved only because of the filing of joint returns, Jay will hereinafter be sometimes referred to as petitioner. The return for the year 1948 reported only two income items: (1) Dividend income in the amount of $20, and (2) a net loss in connection with a factory building in the amount of $488.90. The return for the year 1949 reports three income items: (1) Dividend income of $20, (2) income from the factory building in the amount of $630, and (3) wages from Anker-Holth Manufacturing Company in the amount of $3,055.32, upon which "Amount of Income Tax Withheld" is stated to be $235.23. Both returns state that the return for the prior year was sent to the collector's office in Indianapolis. The return for 1948 was prepared by an accounting firm and was signed on behalf of that firm on a date indicated as "6/9." Jay signed the return on June 10, 1949, and Alice signed it on June 22, 1950. Receipt stamps appearing on the return show that it was received by a deputy collector of internal revenue on June 22, 1950, and by the collector of internal revenue at South Bend, Indiana, *180 on June 28, 1950. [1]
During 1948 and 1949 petitioners owned a majority of the outstanding stock of Pneumatics Incorporated, of Plymouth. Indiana, an Indiana corporation (hereinafter referred to as Pneumatics). Jay was president of Pneumatics and had an authorized salary of $7,500 per annum. Pneumatics paid Jay a salary of $7,500 during the calendar year 1947 from which the sum of $832 was withheld for income taxes. On March 20, 1948, Pneumatics contracted to purchase the outstanding stock of Anker-Holth Manufacturing Company of Port Huron, Michigan, a Michigan corporation (hereinafter referred to as Anker-Holth) from the heirs of George Birkenstein. The purchase price was $114,538.46, payable in varying installments over the *181 succeeding period of approximately 16 years. The contract contained the following paragraph (as modified by a supplemental contract of the same date): "The purchaser will not directly or indirectly cause or permit Anker-Holth to pay any compensation to Creswell in excess of $12,000.00 per annum (except to the extent that the payment of premiums on the aforesaid life insurance policies may be considered compensation, the payment of which premiums shall not reduce the amount of salary payable to Creswell), or to reimburse said Creswell for any expenses incurred by him, except for such normal and customary traveling and other similar expenses as may be required to be incurred in the ordinary course of the business of Anker-Holth; provided that said Creswell shall be reimbursed for his actual expenses of living at Port Huron, Michigan, and for traveling between his home and Port Huron, Michigan, to an amount not to exceed Twelve Hundred ($1200) Dollars in any one calendar year, beginning with the year 1949." Jay became president and chairman of the board of directors of Anker-Holth under a contract of employment dated March 20, 1948. The contract provided for salary at the rate of *182 $1,000 per month, plus normal business expenses incurred by Jay in the conduct of Anker-Holth's business, plus traveling and living expenses when traveling from Plymouth to Port Huron, in an amount not to exceed $1,200 in any one year. Also on March 20, 1948, Pneumatics contracted to "assume responsibility for directing the management" of Anker-Holth for a 10-year period ending June 30, 1958. Pneumatics was to receive $114,538.46 plus the amount of life insurance premiums on the life of Jay payable in installments of varying amounts. The contract called for payments on the principal amount due of $1,538.46 in 1948 and $3,000 through June 20, 1949. The principal amount and the amounts and due dates of these installment payments were the same as those set out in the purchase agreement of the same date. Pneumatics assigned the proceeds of this contract to the former owners of the Anker-Holth stock as additional security for payment by Pneumatics of the purchase price of the Anker-Holth stock. This contract was discontinued in July 1949. Both Pneumatics and Anker-Holth soon encountered financial difficulties. Jay made loans to both corporations. In addition, some of the loans made *183 by Jay to Pneumatics were in turn loaned by Pneumatics to Anker-Holth. At some time prior to August 7, 1950, Pneumatics went into a receivership. Jay maintained a bank account under his name in the Michigan National Bank of Port Huron, Michigan. During the years 1948 and 1949 checks drawn by Anker-Holth totaling $25,468.59 and $34,091.69, [2] respectively, were deposited in this account. These payments were recorded on the books of Anker-Holth as follows: 1948
1949
Travel expense
$7,312.03
$9,883.61
Fees in lieu of salary - Jay
Creswell; paid in cash
6,346.16
Management expense - Jay
Creswell; paid in cash
5,000.00
Travel and entertainment ex-
pense - reimbursed to Jay
Creswell
2,571.65
Accounts payable advance -
Jay Creswell
889.21
Principal paid to former
stockowners
1,538.46
3,000.00
Other items paid to former
stockowners
3,023.57
7,075.88
Interest paid to former
stockowners
3,436.14
3,362.50
Premiums on life insurance
for Jay Creswell
1,240.58
1,770.99
Stock issuance expense
1,240.58
Commission to Pneumatics
1,009.50
Outside engineering
650.00
*184 During the years 1948 and 1949 Anker-Holth purchased U.S. Treasury bonds in the sums of $3,000 and $1,000, respectively, which were delivered to Jay Creswell and recorded on the corporation's books as "Fees in lieu of salary - Jay Creswell; paid in bonds." The $1,000 bond was given to the Marshall County Trust & Savings Bank to replace a bond that was used for collateral for a loan obtained for Anker-Holth. Respondent determined that the items listed in the table above as "Travel expense," "Fees in lieu of salary - Jay Creswell; paid in cash," "Management expense - Jay Creswell; paid in cash," "Travel and entertainment expense - reimbursed to Jay Creswell," "Accounts payable advance - Jay Creswell," and also the $3,000 and $1,000 bonds constituted income received by petitioner and taxable to him in the years of receipt. The books of Anker-Holth show that Jay made the following loans to the corporation: Repay-
Balance at
Year
Loan
ment
end of year
1948
$12,577.50
$12,100.00
$ 457.50
1949
27,611.96
19,783.35
7,828.61
In addition to these cash loans and repayments, Jay and Alice transferred inventory valued at $23,082.56 to Anker-Holth. Jay *185 paid for and caused to be shipped to or for the account of Anker-Holth materials and services amounting to $2,026.12 in 1948 and $9,237.98 in 1949. Anker-Holth purchased the machinery, equipment, tools, dies, jigs, and furniture and fixtures used by Pneumatics from Pneumatics and Alice. The total sound value of these assets was $100,985.10. In a letter written by Jay to the receiver of Pneumatics dated August 7, 1950, Jay included in a list of amounts due him from Pneumatics the following item: "Cash transferred from salary due from Anker Holth Manufacturing Company - shown as management fee $14,346.00". On October 10, 1950, the receiver of Pneumatics wrote a letter to the trustee in bankruptcy of Pneumatics containing a list of Jay's claims which he, the receiver, would recommend for allowance. This list contains the following item: "Jay Creswell has made advances to Pneumatics, Incorporated of Plymouth, Indiana according to cash receipts records of the full amount of the salary paid to him as President of Anker-Holth Manf. Company and recorded as management fees of $14,316.00". The books of Pneumatics show a net balance payable in an account recording loans made to Pneumatics *186 by Jay of $7,577.52 as of December 31, 1948. In addition, the books of Pneumatics show that Jay made cash loans to Pneumatics in 1948 and 1949 of $9,346.16 and $5,000, respectively. Payments to Jay by Anker-Holth for travel and entertainment expenses were generally made without any supporting expense accounts to show details of such expenses. Anker-Holth filed a voluntary petition for Reorganization under Chapter X of the Bankruptcy Act in the United States District Court for the Eastern District of Michigan on November 1, 1949. Jay received $1,269.18 as executive salary from Anker-Holth while it was operating under this reorganization plan during 1949. Opinion KERN, Judge: The major issue for our decision in this case is whether part of the monies deposited by Anker-Holth in petitioner's bank account in the Michigan National Bank at Port Huron, Michigan, together with certain bonds purchased for him, constituted income taxable to petitioner or repayment of loans made to Anker-Holth by petitioner. Respondent contends that these deposits represented salary and expenses paid to petitioner by Anker-Holth under the March 20, 1948, contract of employment which petitioner subsequently *187 loaned to Pneumatics and for which petitioner made claims against Pneumatics after Pneumatics went into receivership, and that these amounts, paid to petitioner as salary and reimbursement for alleged travel and entertainment expenses incurred by petitioner in behalf of Anker-Holth, are taxable as income to petitioner to the extent of the amounts not actually expended in such travel and entertainment. Petitioner, on the other hand, argues that all monies deposited in this bank account were repayments of advances made by him and Pneumatics to Anker-Holth. It is his contention that although Anker-Holth was originally obligated to pay him a salary, its financial condition and demands of creditors made such payments impossible. Petitioner points out that Anker-Holth was in no condition to meet the obligations of either of the 1948 contracts and in fact did not do so, that Anker-Holth could not have continued in business without loans and guarantees from him or from Pneumatics, and that whatever payments he received were in fact repayments of these loans. Under the provisions of the employment contract, Anker-Holth was obligated to pay petitioner as salary $9,346.16 in 1948 and $6,000 *188 in 1949 until July 1949, Under the terms of the management contract, Anker-Holth was obligated to pay Pneumatics $1,538.46 in 1948 and $3,000 in 1949, exclusive of interest charges and insurance premiums. Anker-Holth's books reveal payments to petitioner of $9,346.16 in 1948 and $6,000 in 1949 in cash and bonds, as set forth in our findings. These payments were recorded as "Fees in lieu of salary - Jay Creswell" in 1948 and "Management expense - Jay Creswell" in 1949. A further analysis of deposits in petitioner's bank account and corresponding entries on Anker-Holth's books reveals that all payments under the management contract were made, e.g., items of $1,538.46 and $3,000 paid to petitioner in 1948 and 1949, respectively, as "Principal paid to former stock owners." This analysis also shows payments made to petitioner for "Interest paid to former stock owners" and "Premiums on life insurance for Jay Creswell." [3]
There is no doubt that both Anker-Holth and Pneumatics *189 were in financial difficulties. Petitioner received no salary from Pneumatics in 1948, but, rather, made loans to the corporation. Nor do we doubt that petitioner advanced money to Anker-Holth directly, through Pneumatics, and by means of paying for Anker-Holth's necessary materials and services. However, the evidence does not show that either contract was negated or altered in any manner before July 1949. The record indicates that the conditions of both contracts were carried out and all payments made until the management contract was discontinued in July 1949. Anker-Holth charged these payments off as expenses. It created no accrual account for salaries payable. As respondent notes, the record indicates that petitioner loaned to Pneumatics the salary and expense money which he received from Anker-Holth. In a letter to the receiver of Pneumatics, petitioner made claim for, inter alia, $14,346 loaned by him to that corporation. The receiver recommended the allowance of a claim of $14,316 which he stated was the full amount of the salary paid petitioner by Anker-Holth, which petitioner had loaned to Pneumatics. It will be noted that of the cash and bonds of $15,346.16 received by *190 petitioner from Anker-Holth, $14,346.16 was delivered to him, and $1,000 in bonds was delivered to a bank as collateral for a loan obtained for Anker-Holth. We understand and sympathize with petitioner's feelings in connection with this case. As a layman he looks at the over-all financial results of his business activities for the taxable years and, finding himself worse off financially at the end of those years than before, he concludes that he had no taxable income. However, we think that respondent is correct in his analysis of the rather complicated transactions in the light of the Federal taxing statutes, and in his conclusion that the payments made to petitioner constituted income to him which he loaned after its receipt to one or both of his corporations. He received income which he converted into choses in action, which were either loans or contributions to capital. When these became worthless or uncollectible, they might become the occasion for deductions, but this is not an issue before us. Our only question on this issue is whether the payments stipulated to have been made to petitioner constitute income. On this question we conclude that petitioners have not proved *191 error in respondent's determination. Petitioner did not attempt to prove that the amounts paid him by Anker-Holth as reimbursement for travel and entertainment expense and as an accounts payable advance were actually expended by him. Rather, he contended that these amounts too were repayments of loans made by him to Anker-Holth. For the reasons set forth above, we must hold that petitioner has failed to carry his burden of proof with reference to these items. We point out that respondent has allowed deductible expenses of $3,294.56 for 1948 and $3,297.53 for 1949. Petitioner has failed too to uphold his burden of showing that he filed a timely return for 1948 or that he had a reasonable cause for failure to file a timely return for that year. Petitioner testified that a return was filed early in the year, but that respondent later requested a duplicate which petitioner supplied. There is also some evidence to the effect that an extension of time for the filing of the 1948 return was granted. However, we are given no information concerning the extension, its length, or when it was granted. The return, which is in evidence, bears the petitioner's signature dated June 10, 1949, and *192 his wife's signature dated June 22, 1950. The return bears on its face a stamp indicating its receipt by the respondent dated June 22, 1950. Under these circumstances, we are unable to conclude that the returns were timely filed or that there was reasonable cause for failure to file a timely return and, therefore, uphold respondent's addition to tax under section 291(a), 1939 Code. The only contention that petitioner advances in claiming error with regard to the additions to tax under sections 293(a), 294(d)(1)(a), and 294(d)(2) is that he correctly reported his income for the years 1948 and 1949 and was not obligated to file a declaration of estimated income tax. We have already disposed of this contention and held that petitioner had additional income as determined by respondent. In light of this holding, we conclude that petitioner has failed to prove error in respondent's determinations that additions to tax were due under the above sections. Decision will be entered for the respondent. Footnotes
1. Jay testified that this return was filed in order to replace another return for 1948 which was "filed in the early part of 1949." Assuming the veracity of this testimony, we are still unable to find that a return for 1948 was filed by petitioners on or before the date required by law. A letter from a division chief in the collector's office refers to the granting of an extension, but the same letter refers to the return for 1948 as being delinquent.↩
2. This amount is stipulated. The total of the figures given for the checks drawn in 1949 is $33,882.27. The difference is not explained.↩
3. There was no explanation given as to why the latter amounts, payable by Anker-Holth to Pneumatics under the management contract which was assigned to Anker-Holth's former stockholders, were paid to petitioner.↩